## Case No. 4,312.

EICKEMEYER HAT–BLOCKING MACH. CO. v. PEARCE et al.

[10 Blatchf. 403; 6 Fish. Pat. Cas. 219; 3 O. G. 150.][1]

Circuit Court, S. D. New York. Jan. 31, 1873.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and Samuel S. Fisher, Esq., and here compiled and reprinted by permission. Syllabus and statement are from 6 Fish. Pat. Cas. 219, and the opinion is from 10 Blatchf. 403.]

George Gifford, for complainant.
Charles M. Keller, for defendants.

BLATCHFORD, District Judge. This suit is brought on reissued letters patent granted to the plaintiffs, as assignees of Rudolph Eickemeyer, December 1st, 1868, for an "improvement in machines for stretching hat-bodies," the original letters patent having been granted to said Eickemeyer, February 28th, 1865. The specification, which is signed by Eickemeyer, says: "In the manufacture of felt hats, the bodies, having been formed of a conical shape, and subjected to the process of felting, termed by hatters "sizing," retain their conical form, and require to be stretched in the tip and crown, and also at the brim, to enable the hats to receive and maintain the form subsequently given to them by the operation of blocking. The hat-body being of a conical form, rounded at the tip, is nevertheless made with reference to the hat to be produced, and the different parts of it which are afterwards to be developed into the "tip," "square," "side-crown," "band," and "brim," of the finished hat, are distinguished by imaginary lines or zones around the hat-body; and the same names applied to them, the lower part of the sides being termed the "brim," the upper part of the sides the "side-crown," the line of division between the side-crown and brim the "band," the rounded upper part the "tip," and the dividing line between the tip and side-crown the "square." In stretching hat-bodies for blocking, the band is not generally stretched circumferentially, or but slightly stretched, the stretching being required in the crown and tip, to produce the square or angular corner of the cylindrical or bell-crowned hat, and at the brim, in order that the latter may lie flat, or at right angles, or nearly so, to the side-crown, when blocked; and it is necessary that the body shall be stretched more, in those parts which require stretching, than would be sufficient to conform it to the shape of the hat-block, because, if not over-stretched before blocking, the hat will shrink, when, in wear, it is exposed to moisture, and tend to resume its conical shape, but, if over stretched, and suffered to shrink to the block, will retain its figure afterwards, under ordinary wear and exposure. In stretching a hat-body for square-crowned hats, the upper part of the hat-body is circumferentially stretched, most at the square, or angle of intersection between the side-crown and tip, beginning to stretch gradually from the centre of the tip and from the band, and increasing towards the square. The lower part of the body is stretched circumferentially, most at the edge of the brim, beginning to stretch gradually from the band. This stretching operation has hitherto been commonly performed by hand, notwithstanding the attempts that have been made to use expanding blocks, or expanding devices, inside of the bodies, for stretching the tips or crowns. Hat-bodies are generally made of unequal thickness from tip to brim, but of equal thickness, as near as may be, in the direction of the circumference, and the operation of stretching, sometimes called "wet-blocking," by hand, requires great skill and care to stretch the parts requiring to be stretched, and preserve the requisite circumferential equality of thickness of the body, without over-straining or tearing the hat. The object of my invention is to perform this operation of stretching hat-bodies by machinery, and to

this end I have invented the new and improved machine hereinafter described, whereby both tip and brim, or either, may be properly stretched by the operation of the machine. My said invention of a new and improved machine for stretching hat-bodies consists generally of a radially ribbed or skeleton former, whereon the hat-body is placed to be stretched, and the ribs of which act as internal supporting and stretching surfaces, and a series of external stretching devices, which act upon the outside portions of the hat-body that are to be stretched, in opposition to the internal action of the ribs of the skeleton former, and between the lines of support of the same, the internal and external supporting and stretching devices being so combined and arranged, with relation to each other, and to the work to be done, that, when they are brought together with force, they operate to stretch the hat-body embraced between them, in the required places to develop the desired shape of the hat; and, for the purpose of holding the hat-body in place upon the former, so that the proper portions will be stretched, a clamping ring is also combined with the machine. I have also made the exterior pressing or stretching devices radially adjustable in position relatively to the axis of the ribbed skeleton former, to accommodate the variations of form required, and, in order to vary the degree of stretching of either the tip or brim at pleasure, I have made the external pressing or stretching devices independent of each other, and independently adjustable. It will be observed, upon inspection of the machine as illustrated in the drawings, that, although the general principle and mode of operation of the parts of the machine which act to stretch the tip are the same as in those parts that act to stretch the brim, the adaptation and arrangement of the parts for the two operations are different. The ribs which support the tip have curved, or otherwise inclined, surfaces, to conform to the rounded tip of the hat-body, and the ribs themselves are arranged so that the recesses between them extend inwards to the axis, or nearly so, in order to give room for the portions of the tip and side-crown that are pressed in by the external stretching devices, and the external stretching devices converge closely together, to act upon the upper surface of the tip to be stretched. The ribs which support the brim have straight surfaces radiating from a circle or cylinder of the diameter of the band, and the recesses do not necessarily extend inside of that circle or cylinder, which may be the hub or support of the ribs of the former. The ribs are more in number than the ribs which support the tip, because of the greater surface of the brim to be stretched by them, and the external stretching or pressing devices are not converged together so closely as those which act upon the tip; and it will also

be observed, that the construction and arrangement, respectively, of the parts for stretching the tip and brim of the hat-body, differ so much, that neither will perform the office of the other, although both will perform their offices at the same time upon the same hat-body. For the purpose of securing circumferential equality of action of the stretching devices upon the portions of the hat-body to be stretched, and for convenience and accuracy of adjustment, and facility of operating the stretching devices in a practical machine, I have mounted the internal stretching devices which constitute the skeleton or ribbed former, concentrically, upon the upper end of a vertical sliding spindle, which is moved up and down in guides, in a frame, by a lever, and have attached the exterior stretching devices to the frame, in positions concentric with the axis of the ribbed former, so that the latter may be lowered, to put on and take off the hat-body, and lifted, when the hat-body is put on, to bring the parts together. so as to stretch all the parts operated upon equably in the direction of the circumference of the hat-body. If the exterior and interior devices which act upon the hat-body to stretch it were not guided in this or some equivalent manner, parts of a given zone of the circumference of the body would be apt to stretch more than others, according to their texture, but, by causing the stretching surfaces to act equably, by means of the frame and guides, uniformity in stretching is secured, as far as practicable in such operations." Then follows a description of the construction of the mechanism, with references to three figures of drawings, figure 1 being a vertical central section of the machine; figure 2, a plan of the radially ribbed or skeleton former, and the lower series of stretching rollers; and figure 3, a plan of the arrangement of the upper series of stretching rollers. There is an upright frame, on the top of which is a stationary, horizontal table, having a central circular opening. under and partly within which is situated the skeleton former, made of wood or other suitable material. This former has its vertical profile of conical or other form, corresponding with that of the hat-body before the stretching operation, and a portion of it, at about the middle of its height, is of complete circular form, in its horizontal section, but, above and below this portion, it has a number of vertical recesses, between which is left a corresponding number of equidistant radial ribs, the edges of which ribs form the profile of the former. The former is secured firmly and concentrically upon the upper end of a vertical spindle, which is arranged to slide up and down in guides in the centre of the frame, concentric with the opening in the said horizontal table, and which has applied to it a lever or treadle, by which it can be lifted up, to raise the former A metal clamping ring, the interior of which is of such size

and form as to fit the circular portion of the former, between the upper and lower ribs, is attached, by vertical rods, to and below a head piece of such weight as to be capable of producing the requisite degree of pressure to hold a hat-body upon the former. These rods work up and down by sliding through guides in a stationary horizontal plate, which is supported by vertical pillars upon the said horizontal table, and the clamping ring is thereby kept concentric with the former. Such ring is supported, when not supported by the former, by means of a vertical screw, which screws through a tapped hole in the head piece, and the lower end of which, bearing upon said horizontal plate, prevents the ring from descending below a given position. A series of thin, round-edged rollers, corresponding in number with the upper recesses and ribs of the former, is arranged above the horizontal line of the circular portion of the former, radial to the axis of the former and clamping ring, and opposite the centres of said recesses. The axles of these rollers are supported in hangers, which are secured, by screws, to the said horizontal plate, said screws passing through radial slots in said plate, to enable the rollers to be adjusted toward and from the axis of the former. The surfaces of such ribs and rollers are the stretching surfaces for the tip and crown of the hat-body. A series of thin, round-edged rollers, corresponding in number with the lower recesses and ribs of the former, is arranged below the horizontal line of the circular portion of the former, radial to the axis of the former and clamping ring, and opposite the centres of said recesses. The axles of these rollers are supported in hangers, which are secured by screws to the said horizontal table, the said screws passing through radial slots in the said horizontal table, to enable the rollers to be adjusted toward and from the axis of the former. The surfaces of such ribs and rollers are the stretching surfaces for the brim of the hat-body. The clamping ring is so adjusted by the screws which support it, and the two series of rollers are so adjusted by setting the hangers in which they are supported, that, when a hat-body upon the former is in contact with said ring while said screw rests upon the said horizontal plate, the edges of the two series of rollers are a short distance outside of the profile of the former. The operation of stretching a hat-body in the machine is as follows: The former is first allowed to descend to such a position as to permit the hat-body to be put on and drawn tightly over it. The hat-body, wet with hot water or steam, is put on, and the former is raised up by depressing the outer end of the treadle or lever, when the hat-body comes in contact with the clamping ring, the weight of the ring and of the attached head piece causes the ring to hold the hat-body with sufficient firmness against the cir-

cular portion of the former, to prevent it from slipping between the ring and the former, and the continued upward movement of the former, produced by a suitable pressure upon the outer end of the lever or treadle, brings the hat-body into contact with the two series of rollers, which are thus made to press upon and stretch the portions of the hat-body which are between the rollers and the corresponding ribs of the former, into the recesses. Such portions are thereby stretched over the ribs. By this means, the hat-body is brought to a suitable shape for blocking and shaping the crown and brim of the hat. The specification states, that fixed round-edged surfaces may be substituted for, and would be the equivalents of, the two series of rollers, but that the inventor prefers to use the rollers, as, by preventing friction upon the hat-body, they prevent it from being torn in the stretching operation. The claims are as follows: "1. In a machine for stretching hat-bodies, a skeleton or ribbed and recessed former, substantially such as is herein described. 2. The combination and arrangement of the crown- and tip-supporting ribs with the upper series of stretching devices, substantially as described, operating to stretch the tip and side-crown of the hat-body between them, substantially in the manner hereinbefore set forth. 3. The combination and arrangement of the brim-supporting ribs with the lower series of stretching devices, substantially as described, operating to stretch the brim of the hat-body between them, substantially in the manner set forth. 4. In combination with the supporting ribs of the skeleton former, the stretching devices, operating, as hereinbefore set forth, to stretch the hat-body between them at one operation, as required for blocking, substantially as described. 5. The clamping ring, in combination with the ribs of the skeleton or ribbed former, operating to hold the hat-body thereon during the operation of stretching, substantially as described. 6. The combination, in a machine for stretching hats, of the skeleton or ribbed and recessed former, a clamping ring, and a system of stretching arms or rollers, the whole combined and operating substantially as described. 7. Making the stretching devices for the tip or brim adjustable radially, with relation to each other, so as to vary the degree of stretching of either tip or brim, substantially as described."

The defendants use, for stretching the tip and side-crown of a hat-body, a machine which does not, and cannot, stretch the brim; and, to stretch the brim, they use a separate machine, which does not, and cannot, stretch the tip and side-crown. The defendants' tip and side-crown stretcher has ribs which support the tip and side-crown, and a series of stretching devices, which, instead of being rollers, are fixed round-edged surfaces. The ribs and stretching devices operate to stretch

the tip and side-crown between them. In the plaintiffs' arrangement, however, the operation is such, that the rollers which act upon the exterior of the hat-body, and wrinkle or corrugate it inwardly between the ribs of the former, and thus increase its diameter, act on different points in the hat-body in succession, in lines extending towards the base of it, the parts which have been acted upon being relieved from the pressure of contact with the rollers, as new parts are brought into such contact. In the defendants' tip and side-crown stretcher, the hat-body is placed on a convex-ribbed former, above which is another ribbed former, the ribs of which, when the hat-body reaches the concave part of the latter former, enter between the ribs of the convex former, and the hat-body is wrinkled by the action, so as to be increased in diameter. As the convex former continues to be lifted, the ribs act on the different parts of the hat-body in succession, but, so far from any part already acted upon being relieved at any time, the stretching of every part the stretching of which has once commenced, continues so long as there is any stretching done to any part.

The defendants' brim-stretcher has ribs which support the brim, and a series of stretching devices, which, instead of being rollers, are fixed round-edged surfaces. The ribs and stretching devices operate to stretch the brim between them. But, in the defendants' arrangement, there is a convex-ribbed former, on which the hat-body is placed, which is formed like the ribs and stretchers of an umbrella, the hat-body being placed on the former, when the ribs are in their lowest position. Above this is another ribbed former; and, when the brim on the convex former has reached the concave part of the other former, the wrinkling commences, by the action of the ribs of one former between the ribs of the other former, and then a hand-lever throws out or expands the ribs of the convex former, by an operation like that of opening an umbrella, and the stretching is thereby completed, the ribs of the convex former, during the latter operation, bearing, in their whole length, on the brim, in lines extending from the band to the outside of the brim. The action in the first part of the operation is like that in the defendants' tip-stretcher; but, in the latter part of the operation, there is an action not found in such tip-stretcher nor in the plaintiffs' arrangement.

It is shown, by the evidence, that the defendants' arrangements, in their two stretchers, from the fact that the action is on the whole of a given wrinkle at the same time, are better adapted to the stretching of tender hat-bodies, such as those made of fur, as generally made, than is the plaintiffs' arrangement. But, while the defendants' arrangements may contain improvements on the plaintiffs' arrangement, yet they embody what is claimed in the second and third

claims of the plaintiffs' patent. The defendants' tip and side-crown, stretcher has ribs supporting the tip and side-crown, and a series of stretching devices, which ribs are substantially the same as those of the patent, and which stretching devices are substantially the upper series of stretching devices in the patent, when made in the shape of fixed round-edged surfaces, as suggested in the patent, and the ribs and stretching devices are combined and arranged substantially as described in the patent. They operate to stretch the tip and side-crown between them, substantially in the manner set forth in the patent. So, too, the defendants' brim-stretcher has ribs supporting the brim, and a series of stretching devices, which ribs are substantially the same as those of the patent, and which stretching devices are substantially the lower series of stretching devices in the patent, when made in the shape of fixed round-edged surfaces, as suggested in the patent, and the ribs and stretching devices are combined and arranged substantially as described in the patent. They operate to stretch the brim between them, substantially in the manner set forth in the patent. The defendants' lower formers are radially ribbed. The hat-body to be stretched is placed on them. The ribs of those formers act as internal supporting and stretching surfaces. The defendants have external stretching devices, in series, which act on the outside portions of the hat-body that are to be stretched in opposition to the internal action of the ribs of the lower formers, and between such ribs, and in the centres of the recesses between such ribs. The mechanical combination and arrangement of the internal and external supporting and stretching devices, in the defendants' machines, with relation to each other, and to the work to be done, are such, that the two sets of devices are brought together accurately, and automatically, so that their parts interlock properly and stretch the interposed materials in the required places, and equality in the action circumferentially of the stretching devices on the parts to be stretched, and facility of operation, are secured. The combination consists in mounting the set of ribs and the set of stretching devices concentrically, with a coincident axis, and moving one set accurately towards the other, by mechanical guides, the stretching devices being opposite the centres of the recesses between the ribs. All these features the defendants' machines have in common with the plaintiffs'. These features are essential features in the plaintiffs' arrangement, and are the features covered, as respects the tip-stretcher, by the second claim of the patent, and, as respects the brim-stretcher, by the third claim of the patent. That the defendants have added some features of construction and operation, which are not found in the plaintiffs' patent, whereby the machine may be improved, cannot relieve the defendants from the charge of in-

fringing the second and third claims of the patent, in view of their use of the inventions covered by those claims.

The principal ground of defence urged is, that, before Eickemeyer made his invention, one John Hutchinson, at Matteawan, New York, invented and constructed, and successfully used, in a crude way, instruments for stretching the tips and the brims of hat-bodies, which instruments had the same mode of operation as that of instruments found in the defendants' machines. The date of Eickemeyer's invention was the summer of 1864. The identical instruments which Hutchinson used are produced. They were used by Hutchinson in 1860. They are, and always were, detached parts, and never were organized into a machine working automatically. Hutchinson's parts to stretch the brim of the hat-body are three in number—a convex, conical-shaped former, with ribs; a concave, conical-shaped former, with ribs pivoted like the ribs of an umbrella; and a dome-shaped piece. They are manipulated by handling them. The hat-body is placed on the convex former. The concave former is then placed on the top of the hat-body, with its ribs resting on the hat-body. The dome-shaped piece, which is hollow, is then placed over the concave former, and forced down, so as to drive the ribs of the concave former into the recesses between the ribs of the convex former, and carry the brim, in wrinkles, towards the axis of the convex former. In the defendants' brim stretcher, the brim is carried, in wrinkles, away from the axis of the convex former, because the wrinkling is performed by an operation like that of opening an umbrella. In Hutchinson's device, the wrinkling is performed by an operation like that of shutting an umbrella. Hutchinson's parts to stretch the tip of the hat-body consist of a concave-ribbed former and a convex-ribbed former, manipulated by hand, and, like the two formers in the defendants' tip stretcher, in construction, as ribbed formers, and brought together to stretch the tip between them, placed on the convex former, by pressing the ribs of one former between the recesses in the other former. Hutchinson, in using his brim-stretching devices, employed a lever, which had its fulcrum in a post which formed a part of a building, to make pressure on the top of the dome-shaped piece, the fulcrum being at the end of the lever. There was no organized machine. The description given of the use of the devices is, that they were tried, to see whether they would block a hat or not; that they were not operated continuously; that sometimes Hutchinson would make an alteration, and then another trial would be made, to see whether the alteration was any improvement; that but one brim stretcher was made, and that of wood, which was broken several times in operating it; that the tip stretcher was of wood, and was tried on a few tips,

and was broken, in use, and never repaired; that Hutchinson had the idea of constructing a machine embodying the principle of such devices, but had no definite plan as to the appliances by which the machine was to work out such principle; that nothing was done towards carrying out such intention; that the devices were tried in 1860, prior to, but not later than, June; that they were then stowed away in a closet, where old books and papers were kept, in a factory where Hutchinson continued to be employed for two years afterwards; and that they remained in that closet, unused, for three years and a half, and were then removed to another place, whence they were taken to be used as evidence in favor of the parties defending this suit. These devices of Hutchinson amounted to nothing, and were practically useless, for the reason that they were not combined in an organized machine. They lacked the combination and arrangement of them which Eickemeyer made, and which secures circumferential equality of action of the stretching devices on the material, and accuracy of operation, by means of the concentric approach to, and recession from, each other, of the ribs and stretching devices. The equable intervention of the ribs between the stretching devices is an essential feature of the patent, due to the mechanical organization. There is no such feature in Hutchinson's devices, because there is no mechanical organization capable of developing such feature. Whether the ribs and stretching devices, in Hutchinson's tools, will move concentrically or not, is a matter of accident, and dependent on the skill of the person handling the tools, and the equability of intervention of the ribs and stretching devices is equally a matter of accident and skill in handling.

There is, therefore, nothing in what Hutchinson did that can interfere with the second and third claims of the patent, which are the only ones involved in this suit. Even if Eickemeyer had seen and known of what Hutchinson did, he would have been entitled to make those two claims. It has been attempted to be shown that Eickemeyer knew of and saw Hutchinson's devices. Whether he did or not, is of no importance. But the evidence wholly fails to show that he did. Hutchinson's devices amounted to nothing. They needed the addition of what is found in the defendants' machines, and which makes of them combinations that were invented by Eickemeyer. It is a mistake to say, that the claims of the plaintiffs' patent cover Hutchinson's instruments. So far as the plaintiffs' patent is concerned, those instruments are free to be used by the defendants in the manner in which Hutchinson used them.

The claims of the original patent granted to Eickemeyer were as follows: "1st. The employment, in the process of stretching hats, of a skeleton or ribbed and recessed

former, substantially such as is herein described. 2d. The pressing ring, E, in combination with the skeleton or ribbed and recessed former, substantially as and for the purpose herein specified. 3d. The employment, substantially as herein described, in combination with the skeleton or ribbed and recessed former, of pressing rollers, K, M, or other equivalent pressing devices, operating as herein set forth. 4th. The combination, in a machine for stretching hats, of a skeleton or ribbed and recessed former, a pressing ring, and a system of rollers, or other equivalent pressing devices, the whole combined and operating substantially as and for the purpose herein specified." Because Eickemeyer did not, in his original patent, make the claims which are made in the second and third claims of the reissued patent, but only made claims which were substantially the same as the first, fourth, fifth and sixth claims of the reissued patent, it is argued that he must have seen the devices of Hutchinson. I draw the very opposite inference. For, if he had seen them, it would have been in his mind, in taking out his patent, that the upper ribs and upper stretching devices might be used separately from the lower ribs and lower stretching devices, as Hutchinson used his tools, and, with such idea, Eickemeyer would have made, in his original patent, claims like the second and third claims of the reissued patent, which are fully warranted by what is found in the specification and drawings of the original patent. It would not detract a particle from the merit or validity of Eickemeyer's invention, if he had seen Hutchinson's tools; but there is no satisfactory evidence, derived from witnesses, or from the history of the case, to warrant the conclusion that he saw or knew of them.

There is no more warrant for saying, in this case, that Eickemeyer did not intend, in taking out his original patent, to make such claims as the second and third claims of the reissued patent, than there is, in every case of a reissue, for saying that claims in the reissue, not found in the original, were not intended to be made, when the original was taken out, because they were not put in, as claims, into the original. On this principle, there never could be a reissue covering claims not substantially found, as claims, in the original.

The argument on the part of the defendants seems to be founded on the idea, that the second and third claims of the reissued patent cover the use of Hutchinson's tools, as Hutchinson used them. This is an error. The use of Hutchinson's tools, as he used them, are not combinations of them, such as the second and third claims of the plaintiffs' patent intend and cover. There are no mechanical combinations of Hutchinson's tools, when they are used as he used them. The second claim of the reissue does not cover broadly the use of the tip former in connec-

tion with the upper series of stretchers, detached from the mechanical combination and arrangement of such former and stretchers, found in the plaintiffs' patent, and not found in Hutchinson's tools. So, too, the third claim of the reissue does not cover broadly the use of the brim former in connection with the lower series of stretchers, detached from the mechanical combination and arrangement of such formers and stretchers, found in the plaintiffs' patent and not found in Hutchinson's tools.

There must be a decree for the plaintiffs, for a perpetual injunction, and an account of profits, and an ascertainment of damages, with costs, in respect to the second and third claims of the patent.